SCOTT LAKE
NV Bar No. 15765
MEGAN ORTIZ
NV Bar No. 15614
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 6205
Reno, NV 89513
Phone: (802) 299-7495
Email: slake@biologicaldiversity.org
Email: mortiz@biologicaldiversity.org

ROGER FLYNN
CO Bar No. 21078
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main Street, #2
Lyons, CO 80540
Phone: (303) 823-5738
Email: roger@wmaplaw.org
(*pro hac vice*)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>DOUG BURGUM, in his official capacity as Secretary of the Interior, et al.,<br><br>    Defendants,<br><br>IONEER RHYOLITE RIDGE, LLC<br><br>    Defendant-Intervenor. | Case No: 2:24-cv-02043-CDS-NJK<br><br>**PLAINTIFFS' REPLY TO INTERVENOR-DEFENDANT IONEER RHYOLITE RIDGE LLC AND FEDERAL DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY AND JUDICIAL NOTICE, IN THE ALTERNATIVE** |

COMES NOW Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY, pursuant to Fed. R. Evid. 201(b)(2) and LR 7-2(g) and respectfully submits this reply in support of Plaintiffs' Motion for Supplemental Authority and Judicial Notice.

//

1

### I. The Court should grant Plaintiffs leave to submit the supplemental authority because the proffered Documents are helpful and persuasive under LR 7-2(g)

As all parties have pointed out, Local Rule 7-2(g) states that parties require good cause to be granted leave of Court for proper supplementation. "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021). Courts have previously found good cause exists when the proffered documents "address the same policy provisions at issue [], under similar factual circumstances, and in the same procedural posture." *Id*.

In the case of the proffered Castle Mountain Mine documents, the documents are persuasive and helpful because they demonstrate an inconsistency with BLM's decision-making process when faced with similar fact patterns of the same procedural posture. In the matter of Rhyolite Ridge, BLM considered (1) a mining operation and (2) ancillary structures (in this case a water pipeline, among other things) to support said mining operations when moving forward with a right-of-way ("ROW") under the Mining Law of 1872 and Section 612 of the Surface Resources, Multiple Use Act of 1955 (30 U.S.C. § 612(a). As Plaintiff explained in its initial motion, this is the same set of circumstances in Castle Mountain. The difference with Castle Mountain is the concession that BLM—through issuance of the Federal Register Notice—has agreed and, indeed, required that the Castle Mountain water pipeline and transmission line associated with the project instead be evaluated and authorized under FLPMA Title V and the regulations at 43 C.F.R. Part 2800/2900. This is directly contradictory to Rhyolite Ridge, and supports Plaintiffs arguments in this case.

Intervenor-Defendants and Federal Defendants argue that, in the case of Castle Mountain, the operator simply chose to submit a permit under FLPMA Title V, not that they are necessarily required to do so. *See* Fed. Def. Opp. at 2:19-28; 3:1-3. This is a flawed argument for two reasons. To begin with, the BLM does not publish a Federal Register Notice without first completing a series of deliberate procedural requirements. The Department of the Interior Departmental Manual 416 DM 11 outlines how BLM is to manage the NEPA process. *See* BLM Manual 416 DM 11, Environmental Quality Programs, Managing the

NEPA Process—Bureau of Land Management. Among other things, it states that "early communication is necessary so that BLM can efficiently advise the applicant on the anticipated type of NEPA review required, information needed, and potential data gaps that may or may not need to be filled, so that BLM can describe the relevant regulations and requirements likely to affect the proposed action(s), and to discuss scheduling expectations." *Id*. at § 11.3(A)(4).

Based on these procedures, BLM does not simply publish a Federal Register notice with little to no information on a project. On the contrary, they must be diligent in their review of draft submissions from the applicant prior to moving forward so that they can correctly guide the applicant through the "anticipated type of NEPA review required." *Id.* Accordingly, if the ROW permit from Castle Mountain Mine were actually submitted under irrelevant regulations, the BLM would not have rubber-stamped that misconception in a formal Federal Register notice, but would have rather instructed the applicant of as much and ensured course correction. Federal Defendants and Intervenor-Defendant argues that the Federal Register notice shows no reasoning for the submission of a ROW permit under Title V while simultaneously stating that the applicant intentionally chose that route. In light of BLM's manual requirements, however, it must be presumed that the Federal Register notice reflects that BLM concurs that Castle Mountain properly submitted the ROW permit under the required regulation for evaluation. The documents are thus persuasive on a central issue and can be offered to "provide background against which the Court can evaluate the integrity of BLM's consideration of Ioneer's water pipeline." *See* Intervenor Def. Opp. at 4:10-12.

Second, Defendants similarly point to Handbook 3809-1 to argue that a ROW under FLPMA Title V is not required but merely the elected option by the applicant. *See* Fed. Defs. Opp. at 2:20-28; 3:1-3. Because the scope of Handbook 3809-1 is limited to BLM administered lands and mining related surface disturbance, there is a practical reason to treat larger infrastructure as separate land use proposals under the ROW regulations. To that end, under *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,* 33 F.4th 1202 (9th Cir. 2022) (i.e., *Rosemont*), BLM cannot authorize operations under the Mining Law without a valid mining claim. In *Rosemont*, the Court held that rights under the Mining Law are limited to valid mining claims. *Id*. at 1218. A valid mining claim, in turn, exists only where a "valuable mineral deposit" has been

3

found. *Id.* at 1212. While the court stopped short of requiring BLM to conclusively adjudicate claim validity before authorizing a mine, it held that, in order for BLM to approve mining operations on a particular piece of federal land, the record must contain some evidence supporting claim validity. *Id*. at 1218. Thus, a mining claim may be considered valid under *Rosemont* only where there is some evidence in the record that the land in question contains a valuable mineral deposit. Subsequent decisions in the District of Nevada have acknowledged and applied *Rosemont*'s holding. *See Bartell Ranch v. McCullough*, No. 3:21-cv-000080-MMD-CLB, 2023 WL1782343 (D. Nev. Feb. 6, 2023); *Great Basin Res. Watch v. Dep't of the Interior*, No. 3:19-cv-00661-LRH-CSD, 2023 WL2744682 (D. Nev. March 31, 2023).

In the case of Rhyolite Ridge, Ioneer has not shown that it has valid mining claims covering the lands needed for the water pipeline. Indeed, it would be impossible for Ioneer to show valid claims along the entire pipeline route, as the pipeline will cross at least two other companies' claims. *See* BLM_Supp_0000577. Thus, under *Rosemont*, the pipeline and transportation corridor cannot be authorized as an "operation" under the mining law and must instead be evaluated under BLM's more discretionary FLPMA Title V authority.

Defendants argue that "there is no suggestion that BLM instructed the operator to apply for a Title V right-of-way or that it was required to do so," *see* Fed. Def. Opp at 3:9-10, but, as discussed above, BLM is required to engage in rigorous review of documents submitted by an applicant prior to a Notice of Intent in order to use time efficiently and correctly guide the applicant through the proper NEPA review. Were Castle Mountain not compelled to submit their ROW under FLPMA Title V, then it is unlikely that they would go through the effort to do so when the plans are otherwise not considered as a separate ROW permit. *See* BLM Manual H-3809-1, Surface Management § 4.3.3.2.8 at 4–18 (2012). And because Ioneer's ROW is for the same type of ancillary facility as that in Castle Mountain, the proffered documents show that it, too, must be submitted and evaluated under FLPMA Title V.

Finally, the second prong of the test—whether or not the parties seeking admission of the proffered documents acted diligently—has not been contested. *See Johnson v. PAM Specialty Hosp. of Las Vegas,*

LLC, 2024 U.S. Dist. LEXIS 139135, *2 ( "Good cause exists if: (1) the proposed supplement will assist the determination of the relevant issues and (2) the supplementing party was reasonably diligent in providing the supplemental information."). Nevertheless, Plaintiffs worked diligently to file the Motion and Notice at issue as soon as possible after learning of the documents' existence in the Federal Register Notice, which was published on October 20, 2025. The subject pleadings were filed less than a month later. Plaintiffs have, therefore, complied with LR 7-2(g) and shown good cause to bring the Motion for Leave of Court and the accompanying Notice.

## II.   In the alternative, the Court should take judicial notice of the agency documents because the documents are not contested and highly relevant

Defendants do not and cannot dispute that a public Federal Register notice based on a publicly available application are the kinds of documents that courts can and do routinely take judicial notice of. Instead, Defendants argue that "Courts do not take judicial notice of *irrelevant facts* because they are not 'adjudicative' facts within the scope of Rule 201." *See* Intervenor Def. Opp. at 6:4-6 (emphasis added). Plaintiffs respectfully suggest that the parties' dispute about "relevant" is best addressed when the Court is considering the cross-motions for summary judgment and is fully apprised of the parties' respective positions.

In any event, contrary to Defendants' collective belief, Plaintiffs do not overstate their case regarding relevancy. Plaintiffs have, in fact, explained above at length the relevancy of the documents. Should one mining project—Castle Mountain—be able to proceed with an EIS for a review of a ROW permit under FLPMA Title V for a water pipeline (an ancillary facility) in light of BLM's necessary NEPA review process prior to publishing in the Federal Register, then it can be concluded that Castle Mountain was permitted to proceed because they were submitting their ROW under the correct authority. Meanwhile, in the case of Rhyolite Ridge—which also concerns a mining project with a water pipeline (ancillary facility)—the ROW was evaluated under the Mining Law as opposed to FLPMA Title V. The decision by BLM to publish a Federal Register Notice for Castle Mountain is therefore directly relevant here because it demonstrates

BLM's recognition of the need for FLPMA compliance. And because Plaintiffs have shown that a ROW permit under the Mining Law can only be had where a valid mining claim exists, then it reasons that the Castle Mountain documents demonstrate the need for Rhyolite Ridge to also have its water pipeline ROW reviewed and evaluated under FLPMA Title V.

In short, the documents are relevant, persuasive, and helpful because they show that BLM is evaluating the Castle Mountain ROW under FLPMA Title V for its water pipeline and transmission line—while Rhyolite Ridge's water pipeline was evaluated under the Mining Law. This is the definition of arbitrary and capricious under the Administrative Procedure Act. "An agency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Mont. Wildlife Fedn v. Haaland*, 127 F.4th 1, 36 (9th Cir. 2025) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)). Because these two types of facilities both fall under the same management needs from the BLM, and because those management directives themselves show that BLM is required to use their time efficiently to guide the applicant through the proper NEPA process, the decision for BLM to allow Castle Mountain to pursue their ancillary facility ROW under FLPMA Title V while approving Rhyolite Ridge's under the Mining Law is facially unexplained and inconsistent. *Id*. Because the documents are being presented to support a statutory interpretation argument concerning the same types of facilities, they are, to that end, highly relevant to the Rhyolite Ridge matter.

### III.   Conclusion

Pursuant to LR 7-2(g), Plaintiffs seek leave of Court for Notice of Supplemental Authority for the proffered documents. Plaintiffs have shown good cause for leave and that the documents are highly relevant, particularly persuasive, and helpful to the case. Castle Mountain and Rhyolite Ridge are two separate projects that, while unrelated projects, both make use of federal rights-of-way for ancillary mining facilities.

6

Specifically, in this case, for water pipelines and transmission lines. Because BLM is required to go through an extensive review process prior to publishing a Notice of Intent in the Federal Register, the documents show that the decision for Rhyolite Ridge to be permitted under the authority of the MLA was incorrect, as well as an arbitrary and capricious decision on part of BLM and, therefore, makes the documents highly relevant. Additionally, the Federal Register Notice reflects an agency position and is the quintessential type of document that the Court can and should take judicial notice of. The second document is referenced in the notice and is essential to understand its significance, therefore it is of equal importance. For all of the aforementioned reasons, Plaintiffs ask that the Court GRANT the Motion for Leave and Notice of Supplemental Authority.

Dated this 10th day of December, 2025.

Respectfully submitted,

*/s/ Megan M. Ortiz*
Scott Lake
Megan Ortiz
Center for Biological Diversity
P.O. Box 6205
Reno, NV 89513
(802) 299-7495
slake@biologicaldiversity.org
mortiz@biologicaldiversity.org

*/s/ Roger Flynn*
Roger Flynn
Western Mining Action Project
P.O. Box 349, 440 Main Street, #2
Lyons, CO 80540
(303) 823-5738
roger@wmaplaw.org
(*pro hac vice*)

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5, I hereby certify that on December 10, 2025, I electronically transmitted the attached document to the Clerk of the Court using the Court's CM/ECF System for filing and transmittal of Notice of Electronic Filing to all ECF registrants.

Dated this 10th day of December, 2025.

                                               /s/ *Megan M. Ortiz*
                                               Megan Ortiz